Mr. Cotter, you may proceed. Thank you, Judge Lynch. John Cotter for Defendant Appellant John Lavin. With me is Jennifer Nagle at counsel table. I'd like to reserve three minutes for rebuttal, if I may. Yes, you may. Thank you. It may please the court. Mr. Lavin seeks reversal of the District of Rhode Island's preliminary injunction order enforcing CVS Caremark's non-compete restriction against him as a former employee of the Caremark group at CVS. Mr. Lavin, quickly, fact summarized in one sentence, really, you worked as a negotiator and an executive in the PBM business at CVS. I don't mean to be rude, Mr. Cotter, but you've got very little time. Give us some credit for having read the briefs and knowing the facts. Of course, Your Honor. The preliminary injunction should be reversed under Rhode Island state law, which applies here, because CVS's non-compete is unreasonable in scope and not narrowly tailored to precisely protect any protectable interest of CVS. That's the standard under the state of Rhode Island's law, and it requires strict judicial scrutiny to apply that standard. Well, let's talk about standards. It's my understanding that although the Rhode Island Supreme Court does have a doctrine along the lines that you mentioned, that that doctrine is applied in combination with another doctrine, which is a doctrine that the court in Durapan referred to as limited enforceability, which says, and I'm not intending to be elegant, but which says generally, if an argument is made that a covenant not to compete is overly broad, but if that covenant is reasonable in the circumstances of a particular case with respect to the restrictions to be applied to a particular employee in particular circumstances, we will nonetheless enforce it. The Rhode Island Supreme Court's Durapan opinion is, I think, quite clear, and this court in its decision in Astromed has indeed applied that doctrine in a diversity case out of Rhode Island. It seems to me that's your hurdle in this case. So you're referring to the partial enforcement that Rhode Island does in certain circumstances, and that should be applied according to Rhode Island law, where nothing is wrong with the agreement except that the parties have agreed to some restraint that is somewhat greater than required to protect legitimate interests. And so, first of all, I don't believe that this agreement, and our argument is, it's much more than somewhat greater than required for the reasons— But your argument is that it's overly broad. Correct. And also that it's overreaching, which is another factor. Now, you're confusing two separate issues with respect, right? Because the Rhode Island doctrine is that if the partial enforcement doctrine is to be applied, there are defenses available to it. One of those defenses is bad faith, and I haven't seen any argument made that bad faith is an issue in this case. Another defense is deliberate overreaching, and it's clear that you have made that argument, and that indeed may be a substantial argument in this case, but that's how Rhode Island integrates the two doctrines. So you use deliberate overreaching as a defense to the partial enforcement doctrine. I understand, Your Honor. And my point is that—well, my points are both that this agreement is not somewhat greater than is necessary in the circumstances, and I march through those reasons. In addition, if there was a decision to apply some kind of partial order of auction, apply partial enforcement, then the question would be overreaching, and I believe it's overreaching also. All right. So you say that this doctrine only applies if there's a little bit of overbroadness? I'm only reading what the court said in the Durbin case. It said partial enforcement should be applied when nothing is wrong with the agreement except that the parties have agreed on some restraint that is somewhat greater than required. Yeah. But you're reading somewhat greater than in the way that Judge Lynch just said. You're saying that that means that if it's way greater than, all right, then the doctrine can't be applied, whereas I had always thought that the Durbin language meant that so long as it was greater, didn't matter somewhat, meaning it doesn't matter to what degree it's greater, we can apply partial enforcement. So you're sort of setting up a precondition. You're reading the case as setting up a precondition for this doctrine, but it doesn't make sense to me that that is the way you should properly read it. Doesn't it make more sense to say, look, if on specific facts and a limitation of the non-compete agreement, we will enforce it except if there's bad faith or deliberate overreaching without a precondition? Well, I'm not trying to suggest a precondition. I'm really going for the defense, Your Honor. And I apologize if I wasn't clear. I think that there's color provided by Durbin in the somewhat greater than and in the context of that case, it's helpful. All right. So if you agree the doctrine applies, do you agree that these are the only two exceptions to it, bad faith and deliberate overreaching? Those are the exceptions that are enumerated in the cases. So those are the ones I'm aware of. Okay. So what's your argument? My argument is that there's overreaching here, and I'd like to show that overreaching. On page 25 of our brief, we set forth a chart that shows how the scope of Mr. Lavin's various agreements that he signed over the years for CVS Caremark, how that was expanded by CVS and what CVS did with that, not just for him but for other employees also. Okay. So partly there is this question, what does deliberate mean? Does it mean as to this particular person, or does it mean this is the standard contract that they use for all employees? How do you read it? I read it as it could be in either case. It could be deliberate. In this case, it's as to all the employees that are applying it. Part of the reason that an employer might expand the scope of the class of competitors that are involved, not necessarily legitimately, but might think it should expand it, is if its business increased over the years or changed. They added other enterprises to their enterprise, other businesses to their enterprise. That's a circumstance where you still might have to get to the actual employee, but at least there's an initial thought of why the employer would expand the scope. Now you've got to apply it, though you have to look at the specific employee and see what is the impact on that employee. So, okay. I'm wondering if deliberate overreaching is a sort of second-class bad faith. You know, you're going to chill employees from even looking for other jobs, whether you think you can enforce it or not, and that's what CVS was doing here. Is that the argument you're making? Roughly speaking, Your Honor, bad faith comes with it with a certain amount of requirements and baggage from a lot of other cases, and the court was clear that it also said deliberate overreaching. And the deliberate overreaching here is that CVS not only was chastened by the court in the Sabin case about the scope of its definition of competitor and competition as creating a canyon-wide restriction on what the employee could do. It knew about that, and it was well aware of that. And that supports your deliberate argument. Yes. Go on. Yes, and then as shown on page 25 of the brief, you can see the progression from right after the Sabin decision, where the court decided that it was overreaching in the definition, which at that time included several classes of business, including PBM business and pharmacy and acute care. Then the court said that was a problem. CVS then issued agreements to Mr. Lavin and others that just listed the class of competitors as just PBM services, simply that. That's what PBM executives were getting for the class of competitors that they were restricted from going to. And then they did that again in 2012, but then in 2014, CVS started loading back in the very same competitors that the district court in Sabin had a problem with and that CVS was well aware of were problematic for prescription benefits management employees like Mr. Lavin. And those other services included the same two that were considered problematic by the judge in the 2010 Sabin case, along with several other categories. And a catch-all for any business competing with any of CVS's businesses. And they defined it as an enterprise-wide definition of non-competition. That's what CVS is now going for. Not just care-wide, but now CVS enterprise-wide. And that is something that is problematic, unreasonable, and deliberate overreaching because CVS's business hadn't changed. It's enterprise-wide. Businesses hadn't changed, and there's an admission in the record about that. And Mr. Lavin's role hadn't changed in that time frame, and his role really didn't change even after that. But CVS had no justification based on expansion of its businesses to increase that scope of competitor, nor did it have any basis based on Mr. Lavin's job changing to expand that scope. But there are two prongs to these covenants or this aspect of the covenant. One is the definition of competitor. The other is the definition of competition. And it seems to me you can't look at the definition of competitor without tying it back to the definition of competition, which, as I recall, the agreements from my preparation, didn't expand in any material way. Your Honor, I think I understand your point. Yes, I do agree you have to look at competition. May I finish? Yes, of course. Competition is warped into the definition of competitor, so it does need to be looked at. And in the case now, the definition of competition is different than it was. It's been a consistent definition since around 2011, but it had been sort of any job at the time of Sabin, but then it became the same or similar function or purpose. And CBS relies heavily on that as a narrowing of it. I agree it's more words. I disagree that it provides any real narrowing or any clarity, because to look at this agreement and say, okay, you can't work in retail pharmacy. You can't do the same function. What's a function? We could argue about that. There's no definition. What's a purpose? We don't know. And then they throw into it similar. What's a similar purpose? What's a similar function? Counsel, don't overstay your welcome, but Judge Lopez has a question. I won't allow you to overstay to answer my question, if you would please. This follows up on Judge Selya's question. Theoretically, since one could work for a competitor, as defined in the agreement, but not be engaged in the kind of services for that competitor that would meet the definition of competition, one would then not run afoul, arguably, of this agreement. Isn't that true? If you could define what exactly those services are in the context of the same or similar function or purpose, that hypothetically would be true. But it's the, and I believe this, I'm just to some extent parroting what Judge Selya was saying, it's the competitor definition does seem sweeping and has expanded, but the definition of competition does seem more circumscribed and thereby would allow for a situation where one could go to work for a competitor of CVS, but not be engaged in services and not the definition of competition. I think you said that could happen. Is that correct? If you could understand similar function, if you could understand similar purpose, theoretically it could happen, but I do not agree that one looking at this contract can understand what a function is, what a purpose is, what similar is. So it makes it virtually impossible to know. So there are words placed on the definition of competition, but I don't think they provide any clarity or any reasonable way that someone can read this agreement and figure out what they can or can't do for the retail pharmacy or some other business. Okay. You've reserved two minutes. Thank you, Your Honor. May it please the Court, Michael Rosen for Appellate CVS Pharmacy and I'm joined at Council Table by Allison Anderson. Your Honors, the District Court here properly followed governing Rhode Island law,  looked at the facts and circumstances before and found that this agreement under the facts and circumstances of this case was narrowly tailored. Okay. It's my turn to move you along. The District Court did not expressly adopt the rule of law that Judge Celia has identified. Do you agree that that is the rule of law that we should be considering in this case? Your Honor, the judge did not get to the question, really technically formally get to the question of deliberate overreach or bad faith because the judge found that this agreement was reasonable under the facts and circumstances of this case. And I believe the Durapan case states that you get, if the court finds that the agreement is unreasonable, if it is overly broad, then the court is empowered to consider a partial modification unless it finds bad faith to deliberate overreach. You know, I recently read some novels where people complain about conversations that merely ask questions as though lawyers were involved. But I do expect an answer to the question. You just said, oh, we don't have to reach this issue. If we decide to reach this issue, what is your argument? If the agreement were found to be overly broad, if we were to decide the Durapan case provides the rule for deciding this case, despite the district court not getting there. Your Honor, then you would look at the question of whether the agreement should be partially modified and the question then would be whether there is a defense, essentially, that you should not partially modify or scale it back because of the presence of deliberate overreach or bad faith. Well, Mr. Carter has an argument that is antecedent to that. His argument, as I understand him, is that the employment agreement in this case is so overbroad that a Rhode Island court would say a pox on you, CVS, we're not even going to give you a shot at partial enforcement because partial enforcement only applies if your agreement is a bit overbroad, somewhat overbroad. What do you say to that? I don't disagree with the quote from Durapan that Mr. Carr read. My view is that that's not a bit or minuscule or some very minor amount of overbroad. It's that it's so significantly overbroad that there's no way to consider scaling it back. We don't believe that that's the case on the facts of this case. But I want to emphasize that all of the Rhode Island cases, including the Durapan case, hold that you look at the reasonableness and this question about whether it's overbroad based on the facts and circumstances of the case. And under the facts and circumstances of this case, the provision is not overbroad. That sounds like you want us to decide this appeal without reference to the partial enforcement contract, which I suggest would be pretty perilous from your point of view. Understood, Judge Salia. Can I? You know, we deal with a lot of cases. In some ways, to me, this is a bit like arguments about facial attacks versus as-applied attacks and that Rhode Island law under this doctrine looks at, well, if you look at the facts, is it reasonable to apply it to the facts here? And no, we're not going to do it if there's bad faith or deliberate overreaching. And that just strikes me as such a sensible rule. You don't benefit some party because it may be overbroad as to somebody else. But if it's not overbroad as to this person, subject to the two exceptions, then Rhode Island will enforce it. It's possible that Rhode Island only approaches the problem this way if it's only a little bit overbroad. But as I've said, that reading sort of doesn't make sense to me because I think the two exceptions sort of take care of that issue. And we would agree, Your Honor. The provision is applied reasonably to this individual under these facts and circumstances. And if the Court concludes that the provision is overbroad as to other facts and circumstances, it's appropriate to partially enforce, to modify the provision as to be consistent with the facts of this case. And what do you say to Mr. Carter's argument, which is not without some force, that there's evidence of deliberate overreaching here? I would say several things, some of which are consistent with some of the comments that you, Judge Selya, and Judge Lopez made. First of all, in all instances, this definition of competitor, if you find it to be overbroad, is nonetheless always tethered to an activity restriction, the definition of competition. And the definition of competition essentially makes clear that a person can go to a competitor, to one of these competitors in one of the defined lines of businesses, if the job that they're doing is not the same or similar in function or purpose, or if it's not likely going to result in disclosure or use of confidential information. Our view is that that substantially narrows reasonably and ties to a legitimate business interest, the non-compete overall. So just in that regard, I'm looking again at the definition of competition. It's phrased in the alternative, opposing counsel has expressed concern about the vagueness of the language, the same or similar in function or purposes to the services provided at CVS. I guess you would say you would disagree with that vagueness issue, but as to the second clause, or will likely result in the disclosure of confidential information to a competitor, or the use of confidential information on behalf of a competitor, that perhaps is not subject to the kind of vagueness argument that opposing counsel has raised. I would agree with both points. We do disagree on the first point, on the same or similar in function or purpose point, and I would just emphasize that we're not saying, and nobody has ever taken the position in this case, that Mr. Lavin was barred from being a negotiator in any context for any company. But on the second, the issue was, as found by the district court, is that the job he was taking at PillPack was quite similar, substantially similar to the job he held at CVS. But on the second issue, that gets precisely at what Rhode Island courts recognize to be one of the legitimate interests that would justify enforcement of non-compete, which is protection of confidential information. And this court, the district court, Judge McConnell, found that it was likely that in this position Mr. Lavin would disclose copious confidential information that he still possessed based on the high-level job that he had at CVS. So that second prong buttresses essentially a legitimate purpose, as recognized by Rhode Island courts, to justify enforcement of a non-compete. But, of course, if it's in the eye of the beholder, any company could declare for virtually any job that its former employee goes to, gee, I think it's likely to result in the disclosure of some confidential information. That is pretty broad, and there's nothing constraining that, is there? Well, ultimately, there's this process to constrain that. Well, there's the competition and competitor. There is that. There would have to be, one would think, in applying that language, an element of objective reasonableness, right, likely to result in the disclosure of confidential information. If the fellow was working as a janitor and went from one company to another, now it's possible that he spent his spare time at night rummaging through files and knew some confidential information. But that's not likely from any objective standpoint. I would agree, Your Honor, and I would note that case law, there's already case law that addresses this in the context of assessing whether there is actually a legitimate interest that's jeopardized if the person takes the job with a competitor, looking at whether it's likely that confidential information would be disclosed if the person joins a competitor. The Asterman case gets at that issue. The court here may be factual finding that that is the case. That factual finding is not challenged. But as to the more sort of general concern you have, you know, that Judge Lynch noted that the company could say in any instance, we're concerned, we're not going to let you go to this competitor because our confidential information is at stake. There's no basis to conclude on the record that this company has done that in similar cases. And with respect to the example that Mr. Lavin's counsel noted in their brief, of Mr. Lavin potentially taking a job negotiating real estate deals with Walgreens, the contractual language takes care of that issue because it's just about fundamental logic would dictate that if he was to take a job negotiating real estate deals at Walgreens, Walgreens being a competitor, he's not engaging either of the two prongs of the definition of competition. There is no confidential information that he possesses from the job that he did at CVS that would be placed at risk. There are lines that can be drawn based on this language. It doesn't give the company carte blanche to say in any instance any employee has confidential information that would be at risk in going to another job. Perhaps I misunderstood what you said or perhaps I misunderstand what Judge McConnell said. You said there is no factual dispute on the proposition that Mr. Lavin was in possession of confidential information that he took with him? Apologies, Your Honor. No, there is no evidence, and if I misspoke, I apologize. There is no evidence that he misappropriated or took or retained specific confidential information, but the copious evidence is that he is knowledgeable, was privy to and is knowledgeable of confidential information, and the district court found at page 15 of its decision that it is, and I'm quoting, it is highly likely that Mr. Lavin's new employment will result in the disclosure of confidential information to CVS's competitor. That factual finding is not challenged, and it underpins the conclusion that the provision was narrowly tailored to protect confidential information and should be enforced in this case because that confidential information will be placed at risk. Going back to the question that we were discussing a couple of minutes ago about the broadening of the definition of competition over time, which I appreciate concerns the court, we talked about the fact that that definition is tethered by the activity restriction that's built into the definition of competition. The only point I want to make here is that it was not unreasonable. As demonstrated based on the facts and evidence of this case, it was not unreasonable for the definition of competition to be broadened, broader than just PBM services. So Mr. Cotter notes that there was an earlier draft, an earlier form of agreement that Mr. Lavin signed that only defined competitor as PBM services, and it was broadened to include retail and other parts of the business. On the facts of this case, again, unchallenged in this appeal, Mr. Lavin's job duties extended beyond the care mark PBM part of the CVS business, and he engaged in high-level strategic meetings and had significant confidential information that related to the retail business and that related to the CVS enterprise generally. So it's not unreasonable in the circumstances of a case like this with a high-level executive who is working in areas other than the PBM area for the definition of competition competitor to be broader than just the specific division that he was nominally assigned to. And again, those are factual conclusions that the court reached and are subject to a clear error standard and in any event are not challenged. Can I ask quickly about the 18-month duration of this agreement? I gather that is keyed to the length of contracts that are characteristic of this business. Is that right? Is that the basis for the 18-month duration? That is right, Your Honor.  So it's in that time frame that typically he is negotiating his contracts. The term of those contracts is one to two years. Thank you. Thank you, Your Honor. Regarding the NDA issue as to the definition of competition, in effect that creates, if that were enforced as a way to restrict it, we would effectively adopt an inevitable disclosure type of rule to apply to a non-competition agreement. And that's never been applied in Rhode Island in any case that we've seen. Inevitable disclosure has not been applied in a non-competition scenario. So I think that would be new. As to the point about what was challenged as far as Mr. Lavin's role, we have definitely challenged, and it's in our brief, that his role was extensive regarding issues other than the PBM business. He definitely had some responsibilities with some broader meetings from time to time, and there's one point in CVS's brief where it talks about six meetings held about sort of the future of the business at some breadth wider than PBMs. And then it notes Mr. Lavin attended one of those meetings. There were a score of people invited to them. He was hardly the one who was involved at any kind of specific level. And to say that he was nominally assigned to work for PBMs is just not accurate. His job was working for PBMs. He occasionally did some other things, and we don't deny that he did some other things. We do challenge the level of confidential information he had in those areas and that he would have any opportunity to use what information he had in his new job. I missed that. You do challenge that? We do challenge that, Your Honor. Because the district court did make an express factual finding that it was highly likely that if he went to work in this position for his new employer, that he would use confidential or disclose confidential information. And I don't recall any challenge to that factual finding in your brief. In fact, I thought your brief indicated that most factual findings in the district court's opinion were not being challenged for purposes of this appeal. I think that's right, Your Honor. What I'm trying to suggest is that we challenged whether or not Mr. Lavin would be likely to use the information that he had. But there's a factual finding to that fact, and you've said in your brief that you're not challenging the majority of the factual findings. I think we're not challenging that he did the work. We are challenging the legal conclusion that he is likely to use that going forward. So you regard that as a legal conclusion, not a factual finding? Yes, I do, based on factual findings. But in any event, there was a stream of discussion in the judge's opinion, and then he concludes simply that he just says he's likely to use it. It's really just talking about the information he may have had, not about how he would use it. Okay, thank you. Thank you, Your Honors. The court is going to take a recess before the final case.  Counsel, it's five minutes. Counsel Strang.